

May 15, 2023

Judith A Pompei-Smith
370 Larchwood Dr
Warwick, RI 02886

RE: Mortgage Loan No: █████████
Past Due Since: 01-01-14

Dear Borrower(s):

To the extent your original loan was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this letter is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or impose personal liability for such obligation. However, Creditor retains certain rights under its security instrument, including the right to foreclose its lien.

We want to help you save your home. Call us today to learn more about your options and instructions for how to apply for loss mitigation. The longer you wait, or the further you fall behind on your payments, the harder it will be to find a solution.

If you need help, the following are examples of options that may be possible (most are subject to lender approval):

* Modify your loan terms with us;

* Payment forbearance temporarily gives you more time to pay your monthly payment;

If you are not able to continue paying your mortgage, your best option may be to find more affordable housing. As an alternative to foreclosure, you may be able to sell your home and use the proceeds to pay off your current loan.

CO083-CO EIL

Page 1 of 2

 **Webster**Bank

For help exploring your options, the Federal Government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/find-a-housing-counselor. You may also call the Department of Housing and Urban Development directly at 1-800-569-4287 or TDD (800)-377-8339 for the housing counseling agency nearest you, or you may visit the following website: https://www.hud.gov/homeownerhelp for more information.

You have certain rights under Federal Law related to resolving account errors and requesting information about your account. If you think there is an error with your mortgage loan account or a billing error on your home equity line of credit, or if you wish to request information about your mortgage loan account, please write to us at the following address:

        Webster Bank, N.A., P.O. Box 2647, Hartford, CT 06146

In your letter please include the following information:  Your full name, your account number, your mailing address and a brief description of the error you believe has occurred with your mortgage loan; or the account information you are requesting.  Within (5) days (excluding legal public holidays, Saturdays and Sundays), of receiving a written notice of error or a written request for information, Webster Bank, N.A. will provide a written acknowledgment of receipt of the notice of error or request for information. If you are writing to us in regard to a billing error on a home equity line of credit account, we must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared.

This matter requires your immediate attention.  Call us today to learn about your options.

Sincerely,


Webster Bank, N.A.
Restructure & Recovery Dept.
200 Executive Blvd. SO102
Southington, CT 06489
Direct: (203) 271-7120
Toll Free: 1-800-270-5300
TDD Relay in CT (800) 842-9710
lossmitigation@websterbank.com

CO083-CO EIL

ANSWERS TO PLAINTIFF'S INTERROGATORIES - PLAINTIFF
WAS ADVISED OF DEFENDANT'S PLAN TO REFINANCE WITH
FAMILY MEMBER HOLDING MORTGAGE FOR RESOLUTION
TO BOTH PARTIES - AS BOTH PARTIES WERE ADVISED IN
JUDGE'S PRE-TRIAL PLAN - SEE ANSWER # 2 AND # 5

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **JUDITH POMPEI-SMITH,** | ) |
| **Defendant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WEBSTER BANK, NATIONAL** | ) |
| **ASSOCIATION,** | ) |
| **Plaintiff** | )    C.A. 1:22-cv-00194-JJM-PAS |
| | ) |

## RESPONSE

## TO  THE  PLAINTIFF'S  FIRST SET OF INTERROGATORIES

NOW COMES  the Defendant, Judith Pompei-Smith's Response to  the  Plaintiff, Webster Bank, who respectfully requested an answer to the following Interrogatories within forty-five (45) days pursuant to Federal Rule of Civil Procedure 33.

### DEFINITIONS  -  AS  PROVIDED  BY  THE  PLAINTIFF, WEBSTER BANK

1. The terms "You" and "Yours" shall mean the defendant, Judith Pompei-Smith.

2. The term "Webster" shall mean the plaintiff, Webster Bank, National Association, its agents, representatives, employees, contractors, and attorneys.

3. The term "Property" or "Premises" shall mean the real estate known and numbered as 370 Larchwood Drive, Warwick, Rhode Island.

4. The "Mortgage" shall refer to the Promissory Note executed by You in favor of Webster, dated February 28, 2003 and which  is secured  by  a Mortgage  on  the Property.

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS                                          2

### INTERROGATORIES

INTERROGATORY NO. **1:**

Please Identify Yourself fully, including name, date of birth, home addresses for the past five years, employer, position with employer, employer address, and Identify each person with whom You consulted or caused to be consulted with respect to the matters inquired about in these Interrogatories.

**To identify myself, my name is Judith Pompei-Smith. I am the Defendant in this matter. My date of birth is May 16, 1616 19.**

**My home address for the past five years has been 370 Larchwood Drive, Warwick, RI 02886 and I am self-employed.**

**I, Judith Pompei-Smith, the Defendant have not consulted with anyone regarding the matters inquired about in these Interrogatories.**

**The Plaintiff, Webster Bank has all of the information asked about the Defendant in this question, on file in the Defendant, Judith Pompei-Smith's online Mortgage account.**

INTERROGATORY NO. **2:**

Please Identify every witness (expert or lay) whom You intend to call at the trial of this matter and relate, with particularity and in detail, the expected testimony said witness will give.

**I, Judith Pompei-Smith, the Defendant, have not retained a witness for the Trial regarding this matter.**

**I, the Defendant, Judith Pompei-Smith have not consulted or retained anyone regarding this matter because I'm trying to avoid the legal expenses involved in a Trial and have been researching all available options to resolve this matter. After discussion with my immediate family, I, Judith Pompei-Smith, the Defendant, may have financial**

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS                                                    3

**assistance available from an immediate family member during the end of February, 2023 or the beginning of March, 2023, depending on the pay-off balance amount, etc.**

**For the record, to date, the Plaintiff, Webster Bank has not offered the Defendant, Judith Pompei-Smith any type of option, to help provide both parties with resolution to this matter.**

INTERROGATORY NO. **3:**

Please Identify every person known to You to have knowledge or information of any matter concerning the subject matter of this action (viz, Mass. R. Civ. P. Rule 26(b)(1)), and/or believed by You to have such knowledge, and describe, in detail, the knowledge or information which each said person has.

**I, Judith Pompei-Smith, the Defendant understand the subject matter of the action (viz, Mass. R. Civ. P. Rule 26(b)(1)). The people who have knowledge or information of any matter concerning the subject matter are listed in** <u>**Exhibit #1, Exhibit #2 and Exhibit #3**</u> **in the 64 page Exhibit document that was attached to the Defendant, Judith Pompei-Smith's Answer to the Complaint C.A. 1:22-cv-00194-JJM-PAS.**

**In addition, the Defendant, Judith Pompei-Smith's immediate family members are now aware, but will not be retained as an expert witness or a witness regarding this matter. The only information shared and discussed were financial options available to save my/our home.**

INTERROGATORY NO. **4:**

Please state all facts supporting your contention that you are entitled to the protections of the Servicemember's Civil Relief Act.

**The above-listed question has been asked by the Plaintiff, Webster Bank two (2) times since filing Complaint C.A. 1:22-cv-00194-JJM-PAS and has already been answered by**

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS                                                                 4

the Defendant, Judith Pompei-Smith two (2) times.

The Defendant, Judith Pompei-Smith, reiterates, the supporting facts are in the 64 page Exhibit document attached to my, the Defendant's Answer to the Plaintiff, Webster Bank's filed Complaint. It is impossible to summarize the volume of supporting facts to this question that are in the 64 page Exhibit document.

<u>Please see Exhibit #1, Exhibit #2, and Exhibit #3</u> in the 64 page Exhibit document. Whereby, the Plaintiff, Webster Bank, RI Housing and attorney Rebecca Washington <u>advised me, the Defendant, Judith Pompei-Smith</u>, <u>that I am entitled to the protections of the Servicemember's Civil Relief Act</u>.

<u>Please see Exhibit #8</u>  in the 64 page Exhibit document. Whereby, the Plaintiff, Webster Bank adjusted late charges on June 17, 2022 and several of the month's prior.

<u>Please see Exhibit #10</u> in the 64 page Exhibit document. The Plaintiff, Webster Bank added new messages on the Defendant, Judith Pompei-Smith's monthly Mortgage statements.

In addition, as indicated in my, <u>Judith Pompei-Smith, the Defendant's Answer</u>  to the Plaintiff, Webster Bank's filed Complaint C.A. 1:22-cv-00194-JJM-PAS, <u>on Page 1 of the Defendant's "Answer"</u>, the Defendant answered <u>as quoted below</u>, and the 64 page Exhibit document attached to the Defendant's Answer, supports the same, and cannot be changed.

<u>Page 1 of the Defendant, Judith Pompei-Smith's "Answer"</u>

"The Plaintiff, Webster Bank provided Judith Pompei-Smith, the Defendant, with approximately four years of SCRA protection, from 2018 until May, 2022.

EXHIBIT # 8

C.A. 1:22-cv-00194-JJM-PAS                                                    5

**The Defendant was shocked to receive a Summons filed by Webster Bank. Initially, the Defendant questioned if a Webster Bank employee who was not familiar with the Defendant's "Mortgage", had concerns, and forwarded Defendant's "Mortgage" account information to Attorney Brian Hughes, without all of the DOD documents.**

**Please see Financial Activity with late fees, that the Plaintiff, Webster Bank credited to the Defendant's Mortgage account. <u>Please see Exhibit #6.</u>**

**When the Defendant researched this further and read the "Note" and the "Mortgage" again, and confirmed a Mortgage "maturity date" of March 1, 2018, that reaches statutory limitation in several months, the Defendant's concern escalated. Please see the "Note" and "Mortgage", <u>Exhibit #4 and Exhibit #5.</u>**

**The Defendant now questions, if the Plaintiff, Webster Bank "created" this litigation case (Case No. 1:22-cv-00194-JJM-PAS) as a "tool to fraudulently foreclose" <u>before</u> the Defendant's Mortgage "maturity date" of March 1, 2018, <u>soon reaches the 5 year statue of limitation</u>? Please see the "Note" and "Mortgage", <u>Exhibit #4 and Exhibit #5.</u>"**

INTERROGATORY NO. **5:**

Please state all facts supporting your contention that Webster violated the Real Estate Settlement Procedures Act.

**The above-listed question has been asked by the Plaintiff, Webster Bank two (2) times since filing Complaint C.A. 1:22-cv-00194-JJM-PAS and has been answered by the Defendant, Judith Pompei-Smith two (2) times.**

**As indicated in the "<u>Promissory Note</u>" executed by me, the Defendant, Judith Pompei-Smith in favor of the Plaintiff, Webster, dated February 28, 2003 and which is secured by a Mortgage on the Property, the monthly payment amount, <u>agreed upon is $1,175.66.</u>**

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS

Understandably, banks can require future Escrow payments be added to monthly Mortgage payments. Although, based on <u>RESPA Guidelines</u>, banks are not allowed to add monthly Escrow payments, that are <u>equal to three (3) times the monthly Mortgage payment amount that's indicated in the "Promissory Note</u>."

After February 28, 2003, the Plaintiff, Webster Bank retained my, the Defendant, Judith Pompei-Smith's Mortgage application documents. Therefore, the Plaintiff, Webster Bank has had the ability to verify that I, the Defendant, Judith Pompei-Smith would not qualify to obtain a Mortgage, that required a monthly payment 0f $2,908.37, as it is three (3) times the amount, that the Defendant qualified for, and is three (3) times the amount that the Plaintiff, Webster Bank agreed to receive, as noted in the "Promissory Note", a "Contract".

The property tax required a monthly Escrow payment of $613.99, a total of $7,367.82 to Escrow the annual property tax. <u>With the addition of property tax being Escrowed, a monthly Mortgage payment of $1,789.65 would be required.</u>

After I, Judith Pompei-Smith, the Defendant paid the Plaintiff, Webster Bank <u>$1,175.66</u> for 12 years, toward a 15 year Mortgage, the Plaintiff, Webster Bank sent me, the Defendant a monthly Mortgage statement that indicated an Escrow account was implemented to pay annual property tax and my, the Defendant, Judith Pompei-Smith's new monthly Mortgage payment would be <u>$2,908.37.</u>

The Plaintiff, Webster Bank is requiring Judith Pompei-Smith, the Defendant to pay Webster Bank <u>$1,118.72 more, than the amount needed</u>, to pay my, the Defendant's annual property tax .

<div align="center">i.e.; Annual property tax = $7,367.82</div>

Monthly <u>Escrow</u> Property Tax <u>$613.99 + $1,175.66</u> Monthly Payment <u>Promissory Note</u> = <u>$1,789.65</u>

       $2,908.37   Plaintiff, Webster Bank's required/new monthly payment from Defendant

−  <u>$1,789.65</u>   Amount to pay monthly payment in Promissory Note & escrow property tax

       $1,118.72   <u>Monthly over-charge by the Plaintiff, Webster Bank</u>

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS                                                                 7

Based on the above-listed facts and 64 page Exhibit document that supports the above-referenced facts, I, the Defendant, Judith Pompei-Smith, had recognized the Plaintiff, Webster Bank's violation of the Real Estate Settlement Procedures Act, as indicated in

Section 10 of the Real Estate Settlement Procedures Act (RESPA). RESPA provides protections to borrowers with Escrow accounts. Specifically, it limits the amount of money that a lender may require the borrower to hold in an Escrow account for paying taxes, hazard insurance and other charges related to the property.

INTERROGATORY NO.  **6:**

Please state all facts supporting your contention that Webster violated the Fair Credit Reporting Act.

The above-listed question has been asked by the Plaintiff, Webster Bank two (2) times since filing Complaint C.A. 1:22-cv-00194-JJM-PAS and  has been answered by the Defendant, Judith Pompei-Smith two (2) times.

The Defendant, Judith Pompei-Smith reiterates, the supporting facts are in the 64 page Exhibit document attached to my, the Defendant's Answer to the Plaintiff, Webster Bank's filed Complaint. It's impossible to summarize the volume of supporting facts that are in the 64 page Exhibit document.

**Please see Exhibit #14** which provides evidence that during a "Mortgage Loss Mitigation" process the Plaintiff, Webster Bank was reporting late payments to credit bureaus. Consequently, the Plaintiff, Webster Bank denied Judith Pompei-Smith, the Defendant's Mortgage Loss Mitigation/Modification, based on information reported to them, from a credit reporting agency.

**EXHIBIT # 8**

C.A. 1:22-cv-00194-JJM-PAS                                           8

In addition, the Plaintiff, Webster Bank's other denial reason was borrower has not reaffirmed their debt after a discharged Chapter 7 bankruptcy. That is completely false, as the Defendant, Judith Pompei-Smith's Mortgage was not delinquent when the Chapter 7 bankruptcy was filed in (March, 2013) or when it was discharged in (June, 2013).  Please see Exhibit #14 in the 64 page Exhibit document that was filed with the Defendant's Answer to the Complaint.

Also, Loss Mitigation is the process of borrowers and Mortgage Servicers working together to create a plan to avoid foreclosure. This can be done in several different ways, including through forbearance, repayment plans, loss mitigation, loan modification, etc. Although, the Plaintiff, Webster Bank refused to cancel a scheduled foreclosure after informing the Defendant, Judith Pompei-Smith that her Loss Mitigation package was assigned to their Loss Mitigation Specialist.  Please see <u>Exhibit #14</u> in the 64 page Exhibit document that was filed with the Defendant, Judith Pompei-Smith's Answer to the Complaint (Case No. 1:22-cv-00194-JJM-PAS).

INTERROGATORY NO. **7:**

Please list income for the years 2021 and 2022 including in your answer the sources of each item of income.

The above-listed question has been asked by the Plaintiff, Webster Bank one (1) time since filing Complaint C.A. 1:22-cv-00194-JJM-PAS and  was answered by the Defendant, Judith Pompei-Smith one (1) time.

The Defendant, Judith Pompei-Smith reiterates, due to the Coronavirus Covid-19 pandemic and my high-risk health status, I collected Unemployment for 10 to 11 months during 2021.

An extension to file my 2021 income taxes was filed. Although, the accountant/tax filing office staff are still behind and to date, have not filed my 2021 income taxes.

**EXHIBIT # 8**

**Being self-employed during most of 2022 it is impossible for me to provide a total income received, without an accountant completing my 2022 income taxes.**

**After my, the Defendant's 2021 and 2022 income taxes are filed, I, the Defendant, Judith Pompei-Smith will provide requested after the Court agrees to seal this information, upon receipt.**

Respectfully submitted,

**Judith  Pompei-Smith, Defendant, Pro se**

*Judith Pompei-Smith*

Judith  Pompei-Smith
370 Larchwood Drive
Warwick, RI  02886
(401)  578-8331
E-Mail:  JudiP5163333@Gmail.com

# WebsterBank®

P.O. BOX 30
Waterbury, CT 06720-9962
800-325-2424

Account Number: **LATE FEE'S AND ATTORNEY FEE'S APPLIED IN 2023** ....305

Statement Date: 05/17/2023

**EXHIBIT # 9**

Page 1 of 3

P2

Judith A Pompei-Smith
370 Larchwood Dr
Warwick, RI 02886-9500

435

| | |
|---|---|
| **Account Number** | ....305 |
| **Payment Date** | **06/01/2023** |
| **Payment Amount** | **$115,636.94** |

### Explanation of Payment Amount

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| **Regular Monthly Payment** | **$0.00** |
| Total Fees and Charges | $3,056.56 |
| Past Unpaid Amount | $112,580.38 |
| **Total Payment Amount** | **$115,636.94** |

### Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

**We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.**

**If you want to stop receiving statements, write to us.**

### Account Information

| | |
|---|---|
| Outstanding Principal | $53,174.78 |
| Escrow Balance | $-93,343.08 |
| Suspense Account (unapplied) | $190.72 |
| Corporate Advance | $23,264.55 |
| Interest Rate | 4.875% |
| Prepayment Penalty | Not Applicable |

### Transaction Activity (11/1 to 05/17)

| Date | Description | Principal | Interest | Escrow | Suspense | Other | Total |
|---|---|---|---|---|---|---|---|
| 11/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 12/05 | Property Maintenance | | | | | $20.00 | $20.00 |
| 12/12 | Attorney Fees | | | | | $436.80 | $436.80 |

### **Account History**

**Recent Account History**
- Payment due 10/01/2017: Unpaid balance of $1,864.76
- Payment due 11/01/2017: Unpaid balance of $1,864.76
- Payment due 12/01/2017: Unpaid balance of $1,864.76
- Payment due 01/01/2018: Unpaid balance of $1,864.76
- Payment due 02/01/2018: Unpaid balance of $1,864.76
- Payment due 03/01/2018: Unpaid balance of $780.89
- Current payment due 06/01/2023: $0.00
- **Total: $115,636.94 due. You must pay this amount to bring your loan current.**

**If you are experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $0.00 | |
| Total | $0.00 | $0.00 |

### Important Messages

* **Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**Your loan is past maturity, the payment amount and total payment amount disclosed is not a payoff.**

☐ MSP

0205 0814 P1F 12H-0 DEC21

---

*Detach here and mail with your payment.*

# WebsterBank

**MONTHLY PAYMENT NOTICE**

**LATE FEE'S AND ATTORNEY FEE'S APPLIED IN 2023**

**EXHIBIT # 9**

☐ Check this box if name or mailing address is incorrect and complete form on reverse side.

**Judith A Pompei-Smith**
**370 Larchwood Dr**
**Warwick, RI 02886**

....3305

| Payment Amount | |
|---|---|
| **Payment Date:** | **06/01/2023** |
| **Payment Amount:** | **$115,636.94** |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | **$** |

Make checks payable to:

WEBSTER BANK, N.A.
P.O. BOX 1809
HARTFORD CT 06144-1809

71 00000710073305 11569572 00000000 0101145

**P.O. BOX 30, Waterbury, CT 06720-9962**
**800-325-2424**

Account Number: ...305
Statement Date: 05/17/2023

Page 3 of 3

## Transaction Activity (11/1 to 05/17)

| Date | Description | Principal | Interest | Escrow | Suspense | Other | Total |
|------|-------------|-----------|----------|--------|----------|-------|-------|
| 12/19 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 01/04 | Property Maintenance | | | | | $20.00 | $20.00 |
| 01/09 | City Tax Disbursement | | | $-2,075.25 | | | $-2,075.25 |
| 01/09 | Escrow Advance | | | $2,075.25 | | | $2,075.25 |
| 01/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 01/24 | Property Maintenance | | | | | $20.00 | $20.00 |
| 01/30 | Attorney Fees | | | | | $748.80 | $748.80 |
| 02/07 | Attorney Fees | | | | | $124.80 | $124.80 |
| 02/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 02/27 | Property Maintenance | | | | | $20.00 | $20.00 |
| 03/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 03/28 | Property Maintenance | | | | | $20.00 | $20.00 |
| 03/28 | City Tax Disbursement | | | $-2,139.43 | | | $-2,139.43 |
| 03/28 | Escrow Advance | | | $2,139.43 | | | $2,139.43 |
| 04/12 | | | | | | $42,923.19 | $42,923.19 |
| 04/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 04/28 | Interest on Escrow | | | $0.19 | | | $0.19 |
| 05/01 | Escrow Advance Repayment | | | $-0.19 | | $0.19 | $0.00 |
| 05/02 | Property Maintenance | | | | | $20.00 | $20.00 |
| 05/08 | Attorney Fees | | | | | $3,588.00 | $3,588.00 |
| 05/17 | Attorney Fees | | | | | $405.60 | $405.60 |
| 05/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |

# NOTE

| February 28th, 2003 | Warwick | Rhode Island |
|---|---|---|
| [Date] | [City] | [State] |

370 Larchwood Drive
Warwick, RI 02886
[Property Address]

TRUE CERTIFIED COPY
OF ORIGINAL DOCUMENT

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 149,900.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **First Federal Savings Bank of America**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**        day of each month beginning on **April 01, 2003**          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2018**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **ONE FIRSTFED PARK**
Swansea, MA 02777-1051                              or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,175.66          .

**WEBSTER BANK CHANGED/ INCREASED THIS TO $2,908.37**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

⦿ -5N (0005).02                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-729
Page 1 of 3              Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

D 5



**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Judith A Pompei                                        -Borrower                                                                            -Borrower


_____ (Seal)                    _____ (Seal)
                                                       -Borrower                                                                            -Borrower


_____ (Seal)                    _____ (Seal)
                                                       -Borrower                                                                            -Borrower


_____ (Seal)                    _____ (Seal)
                                                       -Borrower                                                                            -Borrower

*[Sign Original Only]*

First Federal Savings Bank
of America
ONE FIRSTFED PARK
Swansea, MA 02777-1051

6964   Bk= 4457 Pg= 278

Prepared By:

Jesse Alexandre
ONE FIRSTFED PARK
Swansea, MA 02777-1051

──────────────[Space Above This Line For Recording Data]──────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **February 28th, 2003** ,
together with all Riders to this document.
**(B) "Borrower"** is **Judith A Pompei**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **First Federal Savings Bank of America**

Lender is a **Savings Bank**
organized and existing under the laws of **United States of America**

▌3305

RHODE ISLAND - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3040 1/01

**-6(RI)** (0005).01
Page 1 of 15                    Initials:
        VMP MORTGAGE FORMS - (800)521-7291

Lender's address is ONE FIRSTFED PARK, Swansea, MA 02777-1051

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated February 28th, 2003 . The Note states that Borrower owes Lender ONE HUNDRED FORTY NINE THOUSAND NINE HUNDRED AND 00/100 Dollars (U.S. $149,900.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2018 .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

6964    Bk: 4457 Pg: 280

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the    City of Warwick /        [Type of Recording Jurisdiction] of **Kent** County                          [Name of Recording Jurisdiction]:

See legal description marked
"Exhibit A" attached hereto
and made a part hereof

Parcel ID Number:   Plat 223 / Lot 190                    which currently has the address of
**370 Larchwood Drive**                                                        [Street]
**Warwick**                          [City] , Rhode Island   **02886**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP -6(RI) (0005).01              Page 3 of 15        Initials:               Form 3040  1/01

6964   Bk: 4457  Pg: 281

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

6964   B.. - 4457 Ps= 282

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 

# Webster Bank

**P.O. BOX 1809, HARTFORD, CT 06144-1809**
**CUSTOMER SERVICE INQUIRIES: 1-877-679-8181**

PROPERTY ADDRESS:   370  LARCHWOOD DR
WARWICK RI  02886

## MORTGAGE STATEMENT

| | |
|---|---|
| Statement Date: | 09/16/05 |
| Loan Number: | ███████305 |
| **Payment Due Date:** | **10/01/05** |
| Current Payment: | $1,175.66 |
| Past Due Payment(s): | $0.00 |
| Unpaid Late Charge(s): | $0.00 |
| Other Charge(s): | $0.00 |
| **TOTAL  DUE:** | **$1,175.66** |

**Please see back for important information.**

EXACT PAYMENT AMOUNT AS INDICATED IN THE "NOTE"

JUDITH A POMPEI
370 LARCHWOOD DR
WARWICK RI  02886-9500

8880

||||
|---|---|---|
| Previous Year Property Taxes Paid: | $0.00 |
| Previous Year Interest Paid: | $0.00 |

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | LATE CHARGES | FEES/OTHER | TOTAL |
|------|-------------|-----------|----------|--------|--------------|------------|-------|
| 09-06 | PAYMENT | 637.39 | 538.27 | | | | 1175.66 |

| | | | |
|---|---|---|---|
| Principal Balance On  09/16/05 | $131,858.77 | Interest Paid Year-To-Date | $4,936.36 |
| Escrow Balance On    09/16/05 | $0.00 | Taxes Paid Year-To-Date | $0.00 |

**IMPORTANT MESSAGES**

EF06917MO7/5-05

# WebsterBank

P.O. BOX 1809, HARTFORD, CT 06144-1809

**CUSTOMER SERVICE INQUIRIES: 1-800-270-5400**

PROPERTY ADDRESS:  370  LARCHWOOD DR
WARWICK RI 02886

## MORTGAGE STATEMENT

| | |
|---|---|
| Statement Date: | 01/17/06 |
| Loan Number: | ████████3305 |
| **Payment Due Date:** | **02/01/06** |
| Current Payment: | $1,175.66 |
| Past Due Payment(s): | $0.00 |
| Unpaid Late Charge(s): | $0.00 |
| Other Charge(s): | $0.00 |
| **TOTAL  DUE:** | **$1,175.66** |

**Please see back for important information.**

*EXACT PAYMENT AMOUNT AS INDICATED IN THE "NOTE"*

JUDITH A POMPEI
370 LARCHWOOD DR
WARWICK RI 02886-9500

21202

| | | | |
|---|---|---|---|
| Previous Year Property Taxes Paid: | | | $0.00 |
| Previous Year Interest Paid: | | | $6,535.59 |

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | LATE CHARGES | FEES/OTHER | TOTAL |
|---|---|---|---|---|---|---|---|
| 01-03 | PAYMENT | 647.82 | 527.84 | | | | 1175.66 |

| | | | |
|---|---|---|---|
| Principal Balance On  01/17/06 | $129,283.20 | Interest Paid Year-To-Date | $527.84 |
| Escrow Balance On   01/17/06 | $0.00 | Taxes Paid Year-To-Date | $0.00 |

**IMPORTANT MESSAGES**

---

**IMPORTANT TAX INFORMATION - PLEASE RETAIN FOR YOUR RECORDS**

**2005 1098 MORTGAGE INTEREST STATEMENT**

Substitute for 1098
Copy B for Payer OMB No. 1545-0901
Dept of the Treasury-IRS

Telephone: 1-800-270-5400
Tax ID: 06-0273620
WEBSTER BANK, N.A.
P.O. BOX 1809
HARTFORD CT 06144-1809
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

JUDITH A POMPEI
370 LARCHWOOD DR
WARWICK RI 02886

PLEASE SEE IMPORTANT INFORMATION ON REVERSE SIDE

| LOAN #   MSP0710073305 | TAX PAYER ID#   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 |
|---|---|
| **1. MORTGAGE INTEREST PAID**   $6,535.59 | |
| 2. TAXES PAID   $.00 | |
| 3. POINTS PAID   $.00 | |

*I, THE DEFENDANT PAID THE PROPERTY TAXES DIRECT TO CITY TAX ACCESSOR FROM 2003 UNTIL 2013*

# **Webster**Bank

**MORTGAGE STATEMENT**

P.O. BOX 1809, HARTFORD, CT 06144-1809
CUSTOMER SERVICE INQUIRIES: 1-800-270-5400

PROPERTY ADDRESS:   370  LARCHWOOD DR
WARWICK RI 02886

**EXACT PAYMENT AMOUNT AS INDICATED IN THE "NOTE"**

| | |
|---|---|
| Statement Date: | 04/18/11 |
| Loan Number: | █████305 |
| **Payment Due Date:** | **05/01/11** |
| Current Payment: | $1,175.66 |
| Past Due Payment(s): | $0.00 |
| Unpaid Late Charge(s): | $0.00 |
| Other Charge(s): | $0.00 |
| **TOTAL   DUE:** | **$1,175.66** |

**Please see back for important information.**

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI  02886-9500

| | | |
|---|---|---|
| Previous Year Property Taxes Paid: | | $0.00 |
| Previous Year Interest Paid: | | $4,450.20 |

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | LATE CHARGES | FEES/OTHER | TOTAL |
|---|---|---|---|---|---|---|---|
| 04-13 | PAYMENT | 836.33 | 339.33 | | | | 1175.66 |

| | | | | | |
|---|---|---|---|---|---|
| Principal Balance On | 04/18/11 | $82,690.69 | Second Principal Balance | | $0.00 |
| Escrow Balance On | 04/18/11 | $0.00 | Interest Paid Year-To-Date | | $1,377.56 |
| Corporate Advance Balance On | 04/18/11 | $0.00 | Taxes Paid Year-To-Date | | $0.00 |

**IMPORTANT MESSAGES**

Save time and money. Make your loan payment on-line. Go to WebsterBank.com, enroll in Online Banking, then go to Online Profile>Accounts>Add Non-Webster Accounts and follow the easy instructions. Once enrolled, go to Money Transfers>Transfer From/To Non-Webster Accounts and follow the easy instructions. For questions, call 1-800-995-9995.
Look what's new!
You can now request a faxed payoff by calling 1-800-270-5400 and receive your results same day.

□ RS

*Detach here and mail with your payment.*

# **Webster**Bank

**MORTGAGE PAYMENT COUPON**

□ Check this box if name or mailing address is incorrect and complete form on reverse side.

| | |
|---|---|
| Loan Number: | ██████305 |
| Payment Due Date: | 05/01/11 |
| Current Payment: | $1,175.66 |
| Past Due Payment(s): | $0.00 |
| Unpaid Late Charge(s): | $0.00 |
| Other Charge(s): | $0.00 |
| **TOTAL DUE:** | **$1,175.66** |

**PLEASE NOTE:**
* Allow sufficient time for delivery prior to due date.
* Designate additional principal in the box below.

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI  02886-9500

WEBSTER BANK, N.A.
P.O. BOX 1809
HARTFORD CT 06144-1809

If received after 05/17/11, total amount due will be    $1,234.44

| | |
|---|---|
| Additional Principal $ | _____ |
| Additional Escrow   $ | _____ |
| **TOTAL PAID**        $ | _____ |

71 00000710073305  00123444  00117566  0501116

# WebsterBank

PO BOX 30   WATERBURY, CT  06720-0030

ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS
CITY TAX                                    $7,132.64

**The Plaintiff, Webster Bank increased the Defendant's monthly mortgage payment to $2,908.37; 3 times amount listed in "Note" $1,175.666.**

ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE PREPARED FOR:

Loan Number:

STATEMENT RELEASE DATE      03/19/13

NEW MONTHLY PAYMENT IS AS FOLLOWS:

| | |
|---|---|
| Principal and Interest | $1,175.66 |
| Required Escrow Payment | $594.39 |
| Shortage/Surplus Spread | $1,138.32 |
| Buydown or Assistance Payments | $.00 |
| Other | $.00 |
| | $.00 |

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI  02886-9500

| | |
|---|---|
| TOTAL MONTHLY PAYMENT | $2,908.37 |
| NEW PAYMENT EFFECTIVE DATE: | 06/01/13 |

Webster Bank, N.A. has completed an analysis of your escrow account, and has adjusted your mortgage payment to reflect changes in your real estate taxes or property insurance.  The escrow items to be disbursed from your account are itemized below.  If you have questions regarding this analysis, please write our Customer Service Department at Webster Bank, N.A., P.O. Box 30, Waterbury, CT  06720-0030, or call  1-866-861-8252, Monday through Sunday, 7:00 am to 10:00 pm, Eastern Standard Time.

### ANNUAL ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR

This is an estimate of activity in your escrow account during the coming year, based on payments anticipated to be made from your account.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | MIP/PMI | TAXES | PAYMENTS FROM ESCROW ACCOUNT FLOOD | HAZ. INS. | SPECIAL | ESCROW ACCOUNT BALANCE PROJECTED | REQUIRED |
|---|---|---|---|---|---|---|---|---|
| INITIAL DEPOSIT | | | | | | | $11876.69- | $1783.16 |
| JUN | $594.39 | | $1783.16 | | | | $13065.46- | $594.39 * |
| JUL | $594.39 | | | | | | $12471.07- | $1188.78 |
| AUG | $594.39 | | | | | | $11876.68- | $1783.17 |
| SEP | $594.39 | | $1783.16 | | | | $13065.45- | $594.40 |
| OCT | $594.39 | | | | | | $12471.06- | $1188.79 |
| NOV | $594.39 | | | | | | $11876.67- | $1783.18 |
| DEC | $594.39 | | $1783.16 | | | | $13065.44- | $594.41 |
| JAN | $594.39 | | | | | | $12471.05- | $1188.80 |
| FEB | $594.39 | | | | | | $11876.66- | $1783.19 |
| MAR | $594.39 | | $1783.16 | | | | $13065.43- | $594.42 |
| APR | $594.39 | | | | | | $12471.04- | $1188.81 |
| MAY | $594.39 | | | | | | $11876.65- | $1783.20 |

*Indicates a projected low point of$13065.46-.  Your required reserve balance is  $594.39 based on Webster Bank, N.A.'s policy allowable under your mortgage contract, state or federal regulations.  The difference between the projected low point and the required reserve balance is$13659.85.  This is your shortage which has been prorated, added to your monthly payment and will be collected from you over a 12 month period.

Bankruptcy Notice: If you are in bankruptcy or received a bankruptcy discharge of debt, this communication is not an attempt to collect a debt against you personally, but strictly for informational purposes only.

Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

### ESCROW SHORTAGE REPAYMENT FORM

Loan Number: 0710073305                          Name: JUDITH A POMPEI-SMITH
Shortage:   $13,659.85-

Your escrow shortage has been spread over a 12 month period resulting in an increase to your monthly payment.  If you choose to pay your escrow shortage amount in a lump sum, please mail this coupon with your remittance to the following address.

ESCROW DEPARTMENT
Webster Bank
PO Box 30 CH 300
Waterbury, CT  06720-0030

Your payment will be reduced by the prorated monthly/biweekly shortage.  Please reference your loan number on your check.



**WebsterBank**

P.O. BOX 1809, HARTFORD, CT 06144-1809
CUSTOMER SERVICE INQUIRIES: 1-800-270-5400
PROPERTY ADDRESS:  370  LARCHWOOD DR
WARWICK RI O2886

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI  02886-9500

**MORTGAGE STATEMENT**

Statement Date:                 08/16/13
Loan Number:                    ████905

Payment Due Date:               04/01/13

Current Payment:              $2,908.38
Past Due Payment(s):         $11,076.46
Unpaid Late Charge(s):            $0.00
Other Charge(s):                  $0.00

**TOTAL  DUE:**              **$13,984.84**

Please see back for important information.

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | LATE CHARGES | FEES/OTHER | TOTAL |
|------|-------------|-----------|----------|--------|--------------|------------|-------|
| 07-25 | HAZARD INS DISB | | | 544.00- | | | 544.00 |
| 07-25 | ESCROW ADVANCE | | | 544.00 | | | 544.00 |

| | | | | | |
|--|--|--|--|--|--|
| Principal Balance On | 08/16/13 | $62,488.77 | Second Principal Balance | | $0.00 |
| Escrow Balance On | 08/16/13 | $14,262.66- | Interest Paid Year-To-Date | | $783.89 |
| Corporate Advance Balance On | 08/16/13 | $75.00 | Taxes Paid Year-To-Date | | $12,452.49 |

**IMPORTANT MESSAGES**
Bankruptcy Notice: If you are in bankruptcy or received a bankruptcy discharge of debt, this communication is not an attempt to collect a debt against you personally, but strictly for informational purposes only.

☐ RS

---

**WebsterBank**

**PLAINTIFF NEVER CONTACTED RESPA AS INDICATED IN NOTE & MORTGAGE AS REQUIRED**

☐ Check this box if name or mailing address is incorrect and complete form on reverse side.

PLEASE NOTE:
• Allow sufficient time for delivery prior to due date.
• Designate additional principal in the box below.

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI  02886-9500

WEBSTER BANK, N.A.
P.O. BOX 1809
HARTFORD CT 06144-1809

**MORTGAGE PAYMENT COUPON**

Loan Number:                    ████
Payment Due Date:               04/01/13
Current Payment:              $2,908.38
Past Due Payment(s):         $11,076.46
Unpaid Late Charge(s):            $0.00
Other Charge(s):                  $0.00

**TOTAL  DUE:**              **$13,984.84**

If received after 09/17/13,
total amount due will be       $14,043.62

Additional Principal $ _____
Additional Escrow    $ _____
**TOTAL PAID**       $ _____

71 00000710073305  01404362  00290838  0401139

**EXHIBIT # 12**



# POWER OF ATTORNEY APPLICATION

PRIVACY ACT STATEMENT: Information is solicited in accordance with Title 10, US Code Section 3013, and is used to prepare a Power of Attorney (POA). Providing information is voluntary; however, failure to provide information precludes the preparation of a power of attorney.

| Your Name (First, MI, Last) | Rank | SSN | POA Expiration Date (Usually one year) |
|---|---|---|---|
| Steven M. Smith | 1LT | | 1-Jan-30 |

Do you want a "Durable" POA that will remain in effect even if you become disabled, incapacitated or incompetent? ☑ Yes ☐ No

If you are a military member and do not want a durable POA, do you want this POA to remain in effect if you become a prisoner of war or are declared missing? ☑ Yes ☐ No

Do you want this POA to become effective the day that you sign it or do you want it to become effective only if you become disabled, incapacitated, or incompetent? ☑ Now ☐ Upon my disability    01/04/2011

| State of Domicile/Legal Residence: Massachusetts | Will this Power of Attorney be used in Texas? ☐ Yes ☑ No |
|---|---|
| Name of Person Receiving POA (Your Agent) Judith Pompei Smith | Complete Address 370 Larchwood Drive, Warwick, RI 02886 |

| TYPE OF POWER OF ATTORNEY | ☐ General Power of Attorney |
|---|---|

☑ Special Power of Attorney: check one or more of the items below:

**Claims/Financial Transactions:** ☑ Cash checks, etc. (Check with your bank or financial institution to see if they have their own form) ☑ File claims/receive payments   Allotments: ☑ Start ☑ Stop ☑ Change  Amount: $40,000.00
☑ Receive LES          ☑ Obtain Service Relief Loan
Bank Name/Address: ▓▓▓▓▓▓▓▓▓▓   Account Number: ▓▓▓▓▓▓▓▓▓▓

**Government Quarters:** ☐ Sign for ☑ Clear   QUARTER'S ADDRESS: ▓▓▓▓▓▓▓▓▓▓

**Household goods/personal property:** ☑ Receive   ☑ Ship

**Real Property:** ☐ Buy/Mortgage ☐ Refinance ☐ Sell ☑ Manage ☐ Lease your house ☑ Lease new property
LOCATION OF PROPERTY ▓▓▓▓▓▓▓▓▓▓
LEGAL DESCRIPTION OF PROPERTY ▓▓▓▓▓▓▓▓▓▓

**Vehicles:** ☐ Possess, use, register, etc. ☐ Sell ☐ Buy ☐ Ship ☐ Receive
YEAR/MAKE/MODEL _____   VEHICLE IDENTIFICATION NUMBER _____

**Child Care:** ☐ Medical only ☑ Temporary custody/care/loco parentis/Education enrollment
CHILD(REN)S' NAMES and DOB  Michael S. Smith        06/03/2010
CHILD(REN)S' NAMES and DOB _____        _____

**Other:** To (Insert Description)
Maintain monthly payments for medical equipment rentals and medical equipment purchases, as necessary.

---

*Before making a General Power of Attorney, read this **CAUTION**:*

Making a General Power of Attorney (GPOA) is an important action with serious consequences. Your GPOA gives someone else the legal authority to act on your behalf—to do **anything** that you could do. With a GPOA, your agent can (for example) rent or buy a house with your money, borrow money that you must repay, sell your car, sue someone for you, or remove all funds from your bank account. Your agent can legally bind you. While a GPOA can be very helpful, it can also be very dangerous. Regarding using a GPOA, consider:

> Limit the power you give away to only that necessary. If you need someone to perform only specific tasks for you, then you don't need a GPOA. Get a *Special* Power of Attorney—one that will authorize your agent to perform only those specific tasks. We can help you prepare one.

> Limit the duration of your Power of Attorney to no longer than 1 year or a shorter period. Don't set the expiration date longer than you will need your agent's services, and don't give the Power of Attorney before it will be needed.

> Make sure your agent is someone you can trust. If you lose trust in your agent, talk with a legal assistance attorney about *revoking* your Power of Attorney.

> Don't hesitate to talk to a legal assistance attorney if you have any questions.

An official website of the United States government



# The Servicemembers Civil Relief Act (SCRA)

The Servicemembers Civil Relief Act (SCRA) provides legal and financial protections to those who have answered the Nation's call to serve.

The SCRA is a law created to provide extra protections for servicemembers in the event that legal or financial transactions adversely affect their rights during military or uniformed service. These protections enable servicemembers to devote their entire energy to the defense needs of the Nation.

The SCRA applies to the following servicemembers:

- Active duty members of the Army, Marine Corps, Navy, Air Force, and Coast Guard;
- Members of the Reserve component when serving on active duty;
- Members of the National Guard component mobilized under federal orders for more than 30 consecutive days; or
- Active duty commissioned officers of the Public Health Service or the National Oceanic and Atmospheric Administration.

SCRA rights may be exercised by anyone holding a valid power of attorney for the servicemember. Some SCRA protections also apply to dependents.

**According to the U.S. Department of Justice, these are five protections that servicemembers often ask about:**

- Reducing the interest rate on any pre-service loans to a maximum of 6 percent
- Protections against default judgments in civil cases
- Protections against foreclosure on their home
- Protections against repossession of their property
- Termination of residential housing and automobile leases without penalty