# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **WEBSTER BANK, NATIONAL ASSOCIATION,** )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**JUDITH POMPEI-SMITH,** )<br>    **Defendant.** ) | **C.A. 1:22-cv-00194-JJM-PAS** |

## AFFIDAVIT OF COLLEEN MENZIES

NOW COMES Colleen Menzies, being duly sworn, who hereby deposes and states the following:

1. I am an employee of Webster Bank, National Association ("Webster"), the plaintiff herein, and am currently serving as a Managing Director in the Consumer Restructure and Recovery department.

2. I am a citizen of the United States, over the age of twenty-one years, of sound mind, and make this affidavit to the best of my own personal knowledge, information and belief.

3. I have reviewed the books and records of Webster that are kept in the ordinary course of business and pertaining to this lawsuit and this affidavit is based on the knowledge learned therefrom.

4. The defendant, Judith Pompei-Smith, is a resident of Rhode Island.

5. The defendant is and has been the sole owner in fee simple of the real property known and numbered 370 Larchwood Drive, Warwick, RI ("the Property").

6. On or about February 28, 2003, in consideration for a loan made by Plaintiff to the defendant, the defendant executed a promissory note to Webster bank that was secured by a mortgage on the Property.

7. Attached hereto as Exhibit A are true and accurate copies of the *Promissory Note and Mortgage*.

8. Starting on or about February 9, 2012, the defendant repeatedly failed to pay her mortgage pursuant to the terms of the promissory note.

9. Attached hereto as Exhibit B is a true and accurate copy of a *Notice of Default and of Mortgagee's Right to Foreclose* served by Webster upon the defendant.

10. The defendant's loan was placed in default and cured several times until October 4, 2019, when Webster declared another default and accelerated the loan.

11. Attached hereto as Exhibit C is a true and accurate copy of a *Notice of Default and of Intent to Foreclose*, served by Webster upon the defendant.

12. On June 11, 2013, the defendant was discharged in bankruptcy in Chapter 7 proceedings, Case No. 1:13-bk-10642, filed in the United States Bankruptcy Court for the District of Rhode Island.

13. As a result, Webster's remedies on default to collect the amounts due Webster from the defendant are limited to the Property.

14. The defendant has made no payments for over a decade and has been in continuous default for her January 1, 2014 installment payment.

15. As a result of the defendant's default, Webster sought to exercise its remedies to collect the amounts due Webster, including its exercise of the statutory power of sale contained in the Mortgage and the foreclosure of the defendant's right of redemption to the Property.

16. After receiving Webster's October 4, 2019 default notice, Webster received a statement from the Department of the Army stating that, because the defendant receives 56% of her

ex-husband Steven M. Smith's income, she qualifies as his dependent pursuant to the Servicemembers Civil Relief Act.

17. Attached hereto as Exhibit D is a true and accurate copy of a *Memorandum from the Department of the Army dated November 14, 2019.*

18. Upon receiving the letter from the Army, Webster acted in good faith and placed all collection efforts on hold.

19. On December 16, 2021, Webster, through its attorneys Orlans PC, made a renewed demand upon the defendant for payment on its accelerated loan debt.

20. Attached hereto as Exhibit E is a true and accurate copy of *Collection Letter* served by Webster upon the defendant.

21. In response to its Collection Letter, Webster received a second notice from the Department of the Army asserting that the defendant is protected by the Servicemembers Civil Relief Act.

22. Attached hereto as Exhibit F is a true and accurate copy of *Memorandum from the Department of the Army dated January 5, 2022.*

23. Webster conducted an investigation and determined that the defendant does not receive more than fifty percent (50%) of her income from Steven M. Smith, that she does not qualify as a dependent under the Servicemembers Civil Relief Act.

24. Upon information and belief, the defendant does not claim that any portion of her income is derived from her ex-husband.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30th DAY OF

MAY 2023.

_Colleen Menzies_
Managing Director
STATE OF CONNECTICUT
COUNTY OF HARTFORD

Sworn to and subscribed before me this _30_ day of May, 2023.

Notary Public
Name:_____
My commission expires

JULIE KAVANAH
NOTARY PUBLIC
STATE OF CONNECTICUT
MY COMM. EXP. 12-31-2023

# EXHIBIT A

# NOTE

February 28th, 2003
[Date]

**Warwick**
[City]

Rhode Island
[State]

370 Larchwood Drive
Warwick, RI 02886
[Property Address]

TRUE CERTIFIED COPY
OF ORIGINAL DOCUMENT

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 149,900.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is **First Federal Savings Bank of America**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**    day of each month beginning on **April 01, 2003**    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on **March 1, 2018**    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at **ONE FIRSTFED PARK**    or at a different place if required by the Note Holder.
**Swansea, MA 02777-1051**

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,175.66**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

305

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N (0005).02

B05

Form 3200 1/01
Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Judith A Pompei_ _____ (Seal)
Judith A Pompei                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

*[Sign Original Only]*

305

Form 3200 1/01

Return To:
First Federal Savings Bank
of America
ONE FIRSTFED PARK
Swansea, MA 02777-1051

6964  Bk= 4457 Pg= 278

Prepared By:

Jesse Alexandre
ONE FIRSTFED PARK
Swansea, MA 02777-1051

──────────────────[Space Above This Line For Recording Data]──────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 28th, 2003                    ,
together with all Riders to this document.
(B) "Borrower" is Judith A Pompei

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is First Federal Savings Bank of America

Lender is a Savings Bank
organized and existing under the laws of United States of America

3305

RHODE ISLAND - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3040  1/01

VMP -6(RI) (0005).01
Page 1 of 15                    Initials:
        VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **ONE FIRSTFED PARK, Swansea, MA 02777-1051**

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated **February 28th, 2003** .
The Note states that Borrower owes Lender **ONE HUNDRED FORTY NINE THOUSAND NINE HUNDRED AND 00/100** Dollars
(U.S. **$149,900.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2018** .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

3305

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the     City of Warwick /          [Type of Recording Jurisdiction] of  Kent  County                                   [Name of Recording Jurisdiction]:

See legal description marked
"Exhibit A" attached hereto
and made a part hereof

Parcel ID Number:    Plat 223 / Lot 190                        which currently has the address of
370 Larchwood Drive                                                                   [Street]
Warwick                                           [City] , Rhode Island    02886        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials:

3305

-6(RI) (0005).01                    Page 3 of 15                              Form 3040  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

8305

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: 

3305

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

3305

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



Initials: 

 3305

Form 3040   1/01

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

3305

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.





NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

**26. Loan Fees.** Borrower has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loans secured by this Security Instrument:

| | |
|---|---|
| Origination - Discount Fees (points) | $ 2,998.00 |
| Application Fees | $ 270.00 |
| Closing Preparation Fees | $ 0.00 |
| Mortgage Broker Fee | $ 0.00 |
| Other Fees | $ 92.00 |

As provided in Rhode Island General Laws Section 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
GEORGE J. GROSSI, ESQUIRE

_____ (Seal)
Judith A Pompei                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                               -Borrower

3305

Form 3040   1/01

**STATE OF RHODE ISLAND,**

County ss:    Kent

On this    28th   day of    February, 2003  , in    Warwick
in said County, before me personally appeared

Judith A. Pompei

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

George J. Grossi

Notary Public
MY COMMISSION EXPIRES: 6/25/2005

Initials

3305

Form 3040   1/01

-6(RI) (0005).01

Page 15 of 15

# EXHIBIT B





Webster Bank, N.A.
609 West Johnson Ave
Cheshire, CT 06410
WebsterBank.com

February 09, 2012

Judith A Pompei-Smith
370 Larchwood Dr
Warwick, RI 02886

Reference Loan:    Webster Bank, N.A. Loan No. ████ 3305

### NOTICE OF DEFAULT AND OF MORTGAGEE'S RIGHT TO FORECLOSE

Dear Borrower(s):

We are attempting to collect a debt from you and any information we obtain may be used for that purpose.

The above referenced loan is currently in default for the payments due since January 01, 2012. The total arrearage as of the date of this letter (which may include tax and insurance advances, as well as accrued fees and expenses) is $ 2,410.10 (the "Default Balance").

Additionally, you are also required to make all future monthly and other payments to Webster Bank, N.A. (the "Bank") that are not included in this Default Balance figure, as provided in your loan and mortgage documents. Failure to timely cure the default by paying the Default Balance figure set out above and to make such additional required payments within forty-five (45) days of the date of the providing of this notice to you will result in the entire amount of the loan obligation being accelerated and being due and owing in full immediately after the 45-day period automatically and without further notice being provided to you. At that point, the Bank or its successors or assigns shall have the right to foreclose on its mortgage on the property identified above, which secures the referenced loan obligation. Failure to adhere to these requirements may result in your account being forwarded to our attorney in order to commence such a foreclosure action.

After acceleration of the entire amount of the loan obligation, you have the right to reinstate the loan obligation only by complying with the specific requirements that may be set forth in the loan and/or mortgage, which may require that you pay to us all summs that are then due plus our attorney's fees and other reasonable costs of proceedings which have been incurred to the date of such payment. You have the right to bring a court action, or to raise a defense in any foreclosure action, to assert the non-existence of a default, or to raise any other defenses to the acceleration of the loan obligation or foreclosure on the mortgage.

Page 1



Webster Bank, N.A.
609 West Johnson Ave
Cheshire, CT 06410
**WebsterBank**.com

Please be advised that neither the Bank's receipt nor its acceptance of payments over the specified 45-day period shall be deemed to have waived its right to accelerate the loan obligation and foreclose if such payments are not sufficient to have timely cured the existing Default Balance in full and to have fully paid such additional monthly and other payment obligations owing under the loan documents, including those arising over such 45-day period. Please be further advised that unless your loan and/or mortgage documents or applicable law provide otherwise, the Bank fully reserves the right to apply any such partial or otherwise collectively insufficient payments made over such 45-day period to the balance of the loan obligation without waiver of its right to accelerate the loan obligation and to foreclose on its mortgage.

Please be advise that you may be eligible for counseling through the United States Department of Housing and Urban Development ("HUD") approved mortgage counseling agencies. Counseling services information is provided to you, in both English and Spanish, in the enclosed Notice of Availability of Mortgage Counseling Services.

If and to the extent that your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice, which is required under your loan and/or mortgage documents and applicable law, is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obliga-tion. If you are represented by an attorney, please provide us with the attorney's name, address and phone number.

FAILURE TO RESPOND TO THIS LETTER MAY RESULT IN THE LOSS OF YOUR PROPERTY AND MAY ALSO LEAVE YOU SUBJECT TO A DEFICIENCY JUDGEMENT.

Your prompt attention to this matter is now required.

Sincerely,

Madeline Felix
Collections Team Leader
1-800-270-5300 Ext. 37302
Eastern Time

Enclosure (RI Form 24-27-3.1 in both English and Spanish)
CO054

---

**NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND
NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES**

---

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The
Rhode Island Mortgage Foreclosure and Sale Act.

## NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

Re ███████ 3305 (Insert mortgage loan number)

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you
fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan
referenced in this Notice.

## NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you understand
your options and provide resources and referrals that may assist you in preventing foreclosure are available from
mortgage counseling agencies approved by the United States Department of Housing and Urban Development
(HUD). You can locate a HUD approved mortgage counseling agency by calling HUD's toll-free telephone
number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1-
800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing
Counseling Program.

> **HUD Approved Housing Counseling Agencies in Rhode Island** may be found at this link
> http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI.
> If you do not have internet access, call the toll-free number above and request a printed list.

Mortgagee: Webster Bank, N.A
                            (Type or print name of Mortgagee)

Mortgagee Address:
Street: 1009 W. Johnson Ave CH 450
City, State, Zip Code: Cheshire CT 00410

---

Mortgagee Authorized Representative: Moreino Felix    Date mailed 09/02/2012
                                                          (Type or print)                                 (dd/mm/yyyy)

Contact Information for Mortgagee Authorized Representative:

Telephone: 1-800-270-5300
                (Provide toll free number if available)

Email: mfelix@webstermbank.com

---

**AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA**

---

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island § 34-27-3.1 de *The Rhode Island Mortgage Foreclosure and Sale Act* (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA

Asunto: ████ 3305 _____ (inserte el número del préstamo hipotecario)

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

### NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN IPOTECARIA

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el *United States Department of Housing and Urban Development* (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800-877-8339.. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.

Acreedor hipotecario: Webster Bank, na
(Escriba a máquina o en letra de molde el nombre del Acreedor hipotecario)

Dirección del Acreedor hipotecario:
Calle: 1004 W. Johnson Ave CH 450
Ciudad, estado, código postal: Cheshire CT 06410
Representante autorizado del Acreedor hipotecario: Michelle Feux
(Escriba a máquina o en letra de mode)

Fecha de envio por correo: 09|09|2012
(dd/mm/aaaa)

Información de contacto del representante autorizado del Acreedor hipotecario:
Teléfono:  1-800·270·5300
(Proporcione un número gratuito si to time)
Correo electrónico:  mewieurospomk.com

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X      ☐ Agent   ☐ Addressee |
| | B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Judith A. Pompei-Smith<br><br>370 Birchwood Dr<br><br>Warwick RI<br><br>     02886 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7011 1570 0002 6608 1030 |

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# EXHIBIT C



Webster Bank, N.A.
200 Executive Blvd
S0-200
Southington, CT 06489
WebsterBank.com

October 4, 2019

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI 02886

## CERTIFIED

Reference Loan: ████3305        Amount Due: $125,287.94
Property: 370 LARCHWOOD DR WARWICK RI 02886

## NOTICE OF DEFAULT AND INTENT TO FORECLOSE

**"This is an important notice concerning your right to live in your home. Have it translated at once."**

Dear Borrower(s):

If you are currently a debtor in a bankruptcy proceeding or have received a discharge in bankruptcy of any debt to Webster Bank, N.A. and have not reaffirmed the debt pursuant to 11 U.S.C. Section 524(C), Webster Bank, N.A. does not intend to enforce such debt against you and this communication is not an attempt to collect such debt against you personally. Please note, however, that Webster Bank, N.A. reserves all rights to collect all amounts due to it from any collateral as to which it holds a mortgage or other security interest, and from any borrower who has not received a bankruptcy discharge.

Your above referenced loan is currently in default for the payments due since January 1, 2014. The total arrearage as of this date is $125,287.94 (the "Default Balance"). This amount must be paid no later than the close of business on November 18, 2019, to correct this default. If this date falls on a weekend or holiday, this notice expires the following business day. You are also required to make all future monthly and other payments to Webster Bank, N.A. ("Lender") that are not included in this Default Balance figure, as provided in your loan and mortgage documents. However, if you received a discharge of this debt under the Bankruptcy Code, you are not obligated to make any payments on the note securing the mortgage. The purpose of this letter is merely to inform you of the sums past due secured by the mortgage and the possible commencement of foreclosure of the mortgaged property.

You are further advised that if payment of the Default Balance, as stated above, is not received by the close of business on November 18, 2019, we may declare an immediate acceleration of all monies due under your note secured by your mortgage, without further notice or demand. We may then take steps to terminate your ownership in the property by invoking the Statutory Power of Sale and any other remedies permitted by applicable law. Please also note that monthly payment amounts will continue to become due and any late charges will also accrue according to the terms of your loan agreement. The Lender will also be entitled to collect all expenses incurred in pursuing the remedies, including but not limited to, reasonable attorney's fees and costs of title evidence.

Acceleration means that the entire principal balance, together with any accrued interest, late charges, escrow deficiencies, and/or legally collectible expenses will be immediately due and payable. You may sell the property prior to the foreclosure sale and use the proceeds to pay-off the mortgage. You may redeem the property by paying the total amount due prior to the foreclosure sale.

Pursuant to the terms of your Mortgage/Deed of Trust ("Security Instrument"), we are providing you with the following information:

1. You are in default for failure to pay the installment due on January 1, 2014 and the payments due thereafter;
2. In order to cure the default, you must pay the sum of $125,287.94;
3. The amount described in paragraph 2 must be paid on or before November 18, 2019. If this date falls on a weekend or holiday, this notice expires the following business day.
4. Failure to cure the default on or before the date noted in paragraph 3 may result in acceleration of the sums secured by the security instrument and the sale of the property.
5. You have the right to reinstate after acceleration pursuant to paragraph 19 of the Security Instrument as more fully described below, and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale.
6. Failure to adhere to these terms may result in your account being forwarded to our attorney in order to seek to terminate your ownership of the property by commencing foreclosure or other action to seize the property, including invoking the Statutory Power of Sale and any other remedies permitted by applicable law.
7. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided by the terms of your Security Instrument, including, but not limited to, reasonable attorney's fees and costs of title evidence.
8. If Lender invokes the Statutory Power of Sale, Lender will mail a copy of the notice of sale to borrower and to other persons prescribed by applicable law. The notice of sale will be published and property sold in the manner prescribed by applicable law.

RI NOD 9.5.19

9. Lender or its designee may purchase the Property at any sale and the proceeds of any shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by the Security Instrument; and (c) any excess to the person or persons legally entitled to it.

## Borrower's Right to Reinstate After Acceleration:

If Borrower meets certain conditions described below, Borrower shall have the right to have enforcement of the Security Instrument discontinued at any time prior to the earliest of:

a) Five days before sale of the Property pursuant to any power of sale contained in the Security Instrument;
b) Such other period as applicable law might specify for the termination of Borrower's right to reinstate; or
c) Entry of a judgment enforcing the Security Instrument.

Regardless of the limitation on reinstatement to five days before sale of the Property contained in your Security Instrument, you may reinstate by paying the total past-due amount before the foreclosure sale takes place.

The Conditions Borrower must meet in order to reinstate:
1. Pay Lender all sums which then would be due under the Security Instrument and Note as if no acceleration had occurred;
2. Cure any default of any other covenant or agreement;
3. Pay all expenses incurred in enforcing the Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under the Security Instrument;
4. Take such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under the Security Instrument, and Borrower's obligation to pay the sums secured by the Security Instruments shall continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: cash, money order, certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or by electronic funds transfer. Upon reinstatement by Borrower, the Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, the right to reinstate shall not apply if the loan was accelerated because all or part of the Property or any interest in the Property was sold or transferred without Lender's prior written consent.

The acceptance of any partial payment by the Lender on or before November 18, 2019, does not constitute a waiver of rights and the Lender reserves all of its rights against the borrower notwithstanding the application of the partial payment to the loan. Lender fully reserves the right to apply any such partial or otherwise collectively insufficient payments made on or before November 18, 2019 to the balance of the loan obligation without waiver of its right to accelerate the loan obligation and to foreclose on its mortgage.

The name and address of the lender/mortgagee/servicer of your loan is: Webster Bank, N.A., 200 Executive Blvd., Southington, CT 06489-1042

The name of any current or former mortgage broker or mortgage loan originator is: Webster Bank N.A. originated by First Federal Savings Bank of America.

Please be advised that you may be eligible for counseling through the United States Department of Housing and Urban Development ("HUD") approved mortgage counseling agencies. You can locate a HUD approved mortgage counseling agency by calling HUD's toll free number 1-800-569-4287, the TDD number is 1-800-877-8339, or by accessing HUD's internet homepage at www.HUD.gov. Foreclosure counseling services are available free of charge. Counseling services information is provided to you, in English, Spanish and Portuguese in the enclosed Notice of Mediation.

Failure to respond to this letter may result in the loss of your property and, provided you have not received a discharge of the debt under the Bankruptcy Code, also may leave you subject to a Deficiency Judgment. You may be evicted from the home after a foreclosure sale. Your prompt attention to this matter is now required.

You may have the following additional rights, depending on the terms of the residential mortgage: (i) to refinance the obligation by obtaining a loan which would fully repay the residential mortgage debtor; and (ii) to voluntarily grant a deed to the residential mortgage lender in lieu of foreclosure.

If you dispute that a default has occurred, if you dispute the amount that you owe or wish to make payments, please call 1-800-270-5300 or write to me: Webster Bank, N.A., 200 Executive Blvd. North, Southington, CT 06489-1042.

Your prompt attention to this matter is now required.

Sincerely,

April Strachan
Collections Representative

Webster Bank, NA
200 Executive Blvd.
Southington, CT 06489-1042
Mailstop SO200
Pho: 1-800-270-5300
Fax: 203-294-8369
astrachan@websterbank.com


Enclosures:
3.1 Notice Notice of Default and Right to Foreclose
3.2 Notice of Mediation
HUD Approved Counseling Agencies

 **Webster**Bank

April Strachan
Webster Bank Collections
200 Executive Blvd.
Southington, CT 06489

SEQ# 0000001

RETURN RECEIPT REQUESTED ELECTRONICALLY



9314 8001 1300 0136 2690 69

FIRST CLASS
POSTAGE AND
FEES PAID
CMSI

JUDITH A POMPEI-SMITH
370 LARCHWOOD DR
WARWICK RI 02886-9500

# EXHIBIT D



**DEPARTMENT OF THE ARMY**
LEGAL SERVICES/JAG
10 General Greene Avenue
Natick, MA 01760

1

**Memorandum For Record   (MFR)**        **14 November 2019**

**Subject:**    Steven M. Smith, 0-2 (1LT) First Lieutenant, Active Duty, Enlisted Personnel

          <u>"Notice Of Default And Intent To Foreclose  &ndash;  Dated: October 4, 2019"</u>

          Judith Pompei Smith  &ndash;    Mortgage / Loan#:    ███ 3305

**To:**       Webster Bank

**From:**    Department Of The Army  &ndash;    Office Of The Judge Advocate General

While providing legal assistance, a comprehensive review of Lt. Smith's and Judith Pompei Smith's correspondence to and from Webster Bank and Orlans PC Collection Service was completed, and as follows:

Please be advised, the "Intent To Foreclose" action in Webster Bank's letter to Judith Pompei Smith, will be a violation of a Servicemember's rights and protections, as indicated in the Servicemembers' Civil Relief Act ("SCRA").

<u>Reference</u>: *Servicemember's Civil Relief Act ("SCRA") 50 U.S.C., (I) <u>Active Duty</u>, as defined in Section 101 (d) (1) of Title 10; <u>Protection To Dependents</u>, as defined in Section 308 (50 U.S.C. § 3959); and <u>Mortgages</u> in Section 303 (50 U.S.C. § 3953).*

Judith Pompei Smith receives 56% of Lt. Smith's income. Judith and son, Michael Smith are both Dependents of Lt. Steven M. Smith, all reside at 370 Larchwood Drive, Warwick, RI.

Both of Lt. Smith's Dependents are registered in the Department of Defense (DOD) and MilConnect computer data system's. Both Dependents retain active Department of Defense (DOD) Military Identification and Privilege Cards.

<u>Reference</u>: **The screenshot view from MilConnect Servicemember computer data system, that confirms the same.   <u>Exhibit # 1</u>**

On February 27th, 2018, **"Rhode Island Housing"** sent Webster Bank a letter regarding Lt. Smith and Judith Pompei Smith's eligibility to receive SCRA protection. That letter

indicates, **"verification was completed"**, which confirms Rhode Island ID's, Department of Defense (DOD) Military ID Cards, and a Department of Defense (DOD) Activity Status Report were all viewed by Rhode Island Housing personnel. **Exhibit # 2**

Subsequently, Lt. Smith's Commanding Officer sent Webster Bank, Lt. Smith's "Permanent Order" and updated Department of Defense (DOD) "Activity Status Report's" on an every 6-month basis.

The above-listed document processes' confirms that Lt. Smith followed the *"Department of Defense (DOD) ("SCRA") Document Guidelines For Verification Of A Servicemember's Active Duty Status And Dependents"*. Consequently, Lt. Smith has satisfied the ("SCRA") verification process. The aforementioned, concludes Lt. Smith and his Dependent's are eligible for Servicemembers' Civil Relief Act ("SCRA") protection benefits.

Regarding Webster Bank requesting additional documents from Lt. Smith, Webster Bank cannot receive a copy of Lt. Smith and his Dependent's military ID card's. **Please note,** Rhode Island Housing did not send Webster Bank a copy of the Smith's military ID cards, because Rhode Island Housing's personnel, are required to act in accordance with the laws in place, to safeguard Servicemember's military and personal information/data.

**Reference:** *"Photocopying any U.S. government identification card is prohibited; it's a violation of Title 18, U.S.C., Part 1, Chapter 33, Section 701".*

It was noted that Webster Bank maintained compliance with federal law and the Department of Defense (DOD) on **March 6th, 2018.** Webster Bank sent a letter to Judith Pompei Smith, advising her SCRA protection benefits will be honored. **Exhibit # 3**

However, **from March 6th, 2018 to present,** despite Webster Bank honoring Judith Pompei Smith's SCRA protection benefits, Webster Bank left Judith's mortgage account in a **"foreclosure" status,** in Webster Banks' computer system.

The **"foreclosure status"** prevented Judith Pompei Smith from having the ability to communicate with Webster Bank employees by telephone. Each time Judith called Webster Bank, she was advised that her mortgage was in a "foreclosure status" so they're not allowed to speak with her, and then advised her, to contact Orlans PC Collection Service. **"Foreclosure"** is listed on Judith's monthly mortgage statements, which confirms the same. One may question, if the **"foreclosure status"** caused Judith's mortgage file to be shuffled back and forth, from Webster Bank to Orlans PC Collection Service?

**Regarding Orlans PC Collection Service,** in (February of 2018 and again in February of 2019) Orlans PC Collection Service sent **"Intent To Foreclose" letters** to the Smith family.

3

The letter dated February 4th, 2019 had one addressed to Judith Pompei Smith, one to Lt. Smith, and one was addressed to Currant Occupant: 370 Larchwood Drive, Warwick, RI. The February 4th, 2019 "Intent to Foreclose" letter listed a foreclosure sale date of March 28th, 2019.

Orlans PC Collection Service is a "debt collector" and Webster Bank sharing any of Lt. Smith's military and/or personal information/data with a "debt collector, is a "breach" of the *"Department of Defense (DOD) Privacy Program, Section 552 (a) of Title 5, U.S.C.; Department of Defense (DOD) Regulation 5400.11-R"*. This is a very serious reportable matter in that federal laws are in place to safeguard individual privacy of information in Servicemember's records, and to protect from persons, other than authorized users.

**Conclusion**: Based on information in this Memorandum and the attached Exhibits, we expect Webster Bank to maintain compliance with federal laws and Department of Defense (DOD) and cease and desist the "Notice Of Default And Intent To Foreclose," and all other actions, therein.

If Webster Bank does not provide immediate resolution with honoring SCRA protection benefits to Lt. Steven Smith and his Dependent, Judith Pompel Smith, Lt. Smith's file will be forwarded to the Department of Justice, (DOJ) Attorney General to proceed with legal action, accordingly.

Thank you for your prompt attention to this matter.

Second Lieutenant, 2LT, USA
Judge Advocate

Enclosures: ( 3 )

1. Exhibit# 1   Screenshot view of Lt. Smith's Dependents in MilConnect system; 1 page
2. Exhibit# 2   Letter from Rhode Island Housing; 1 page
3. Exhibit# 3   Letter from Webster Bank; 1 page

Distribution:

Individual ( 1 )
Dependent's ( 2 )
File ( 1 )
iPerms ( 1 )
Webster Bank ( 2 )
Rhode Island Housing, Nicole Clement, General Counsel ( 1 )

**Exhibit #  1**



| ServiceMember | Selective Service # | Status | Date of Birth |
|---|---|---|---|
| Steven M Smith | | Active | |

| Address | City | State | Zip Code |
|---|---|---|---|
| 370 Larchwood Drive | Warwick | RI | 02886 |

| Rank | Title | Pay Grade | Enlisted |
|---|---|---|---|
| (O) Commissioned Officer | (1LT) First Lieutenant | O-2 | 02 Feb 2009 |

## DEPENDENTS

| Name | Type -or- Percentage | Date of Birth | Social Security | Address |
|---|---|---|---|---|
| Judith Pompei Smith | 58 % Gam/Income | 05/16/1964 | | 370 Larchwood Drive Warwick, RI |
| Smith | Child | 06/03/2010 | | 370 Larchwood Drive Warwick, RI |

# Exhibit # 2

 **Rhode Island Housing**

[Page 1 of 8]

## ► TIME SENSITIVE ◄

February 27, 2018

RE: **370 Larchwood Drive, Warwick, RI 02886**

**Owner:**  Judith Pompei Smith

**Telephone:**  (401) 578-8331

**E-Mail:**  JudiP5163333@Gmail.Com

**Foreclosure Date:**  3/6/2018

TO:  Webster Bank
     **Attention: Loss Mitigation**
     609 West Johnson Avenue
     Chesire, CT 06410

     **Loan Number:** ██████3305

     -And-

     Orlans PC
     **Attention: SCRA**
     P.O. Box 540540
     Waltham, MA 02454
     **File Number:** 17-007730

Please be advised that the scheduled foreclosure for the above-listed property (370 Larchwood Drive, Warwick, RI 02886) needs to be cancelled. The owner, Judith Pompei Smith is entitled to (SCRA) benefits of the Servicemembers Civil Relief Act. Verification was completed, see attached. Please contact Judith with confirmation regarding the same.

We needed to review Judith's mortgage history and data with a family member. Judith experienced medical complications, is currently finishing chemo treatments, and was unable to come in. With the aforementioned

# Exhibit # 3

 **Webster**Bank

March 6, 2018

JUDITH A. POMPEI-SMITH
370 LARCHWOOD DR
WARWICK, RI 02886

Re: Loan ▮▮▮▮305

Dear Customer:

Your request for benefits pursuant to the provisions of the Service Member Civil Relief Act (SCRA) has
been received by Webster Bank. Steven Smith's report to active duty date was specified as February 2,
2009. Webster Bank has made the following changes to your loan:

1. Late charges previously paid on the loan in the amount of $881.70 have been reversed and
   applied to the principal balance.
2. Two unpaid late charges totaling $117.56 have been waived.

Please forward a copy of Steven's orders as soon as possible. Benefits will end one year after your
release or discharge from active duty military service. Should you have any questions please contact me
at 800-270-5400 ext. 45641 or email – jgagne@websterbank.com

Sincerely,

Jared Gagne
Loan Operations

# EXHIBIT E

December 16, 2021

To: Judith A. Pompei
370 Larchwood Drive
Warwick, RI 02886
**Reference: 19-006508**

Orlans PC
PO Box 540540
Waltham, MA 02454
(248) 502-1400 from 8:30 am to 5:00 pm ET, Monday to Friday
www.Orlans.com

**Orlans PC is a debt collector.** We are trying to collect a debt that you owe to Webster Bank. We will use information you give us to help collect the debt.

## Our information shows:

You have a mortgage or deed of trust with Webster Bank with account number 0710073305.

See the enclosed periodic statement for an itemization of the debt

**Total amount of the debt now:**          **$170,287.31**

## How can you dispute the debt?

- **Call or write to us by January 22, 2022, to dispute all or par the debt.** If you do not, we will assume that our information is correct.

- **If you write to us by January 22, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at info@orlans.com

## What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by **January 22, 2022**, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at info@orlans.com

- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

- Contact us about your payment options.

- Póngase en contacto con nosotros para solicitar una copia de este formulario en español.

<u>Notice</u>: See reverse side for important information.

✂------------------------------------------------------------------------

## How do you want to respond?

**Mail this form to:**
Orlans PC
1650 West Big Beaver Road
Troy, MI 48084

Judith A. Pompei
370 Larchwood Drive
Warwick, RI 02886

*Check all that apply:*

☐ **I want to dispute the debt because I think:**

  ☐ This is not my debt.

  ☐ The amount is wrong.

  ☐ Other (please describe on reverse or attach additional information).

☐ **I want you to send me the name and address of the original creditor.**

☐ **I enclosed this amount:**          | $         |

Make your check payable to Webster Bank. Include the reference number 0710073305.

☐ **Quiero este formulario en español.**

## ADDITIONAL NOTICES

The law does not require us to wait until January 22, 2022 before commencing a foreclosure action. If, however, you request proof of the debt or the name and address of the original creditor by January 22, 202 the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail t requested information to you.

Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe a later date may be greater than the amount stated in this letter. Please contact Webster Bank or Orlans F (248) 502-1400 to obtain an updated payoff amount.

## BANKRUPTCY NOTICE

IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.

## SCRA NOTICE

If you are on active duty in the military or are a dependent of someone who is on active duty in military, or if you have been in the prior twelve months, you may be eligible for certain protections under the federal Service Members Civil Relief Act (50 USC App. §§501-596) (SCRA). Those who may be entitled to such legal protection under the SCRA are: active duty members of the Army, Navy, Air Force, Marine Corps, Space Force, Coast Guard, and active service National Guard; active service members of the commissioned corps of the National Oceanic and Atmospheric Administration; active service members of the commissioned corps of the Public Health Service; United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and their spouses and/or dependents.

If you feel you may be eligible for such protections, you should contact both the servicer and Orlans PC immediately and forward a copy of the service member's military orders to:

Orlans PC
1650 West Big Beaver Road
Troy, MI 48084
Attn: SCRA                          and
Phone: (781) 790-7800

Webster Bank
200 Executive Blvd., SO- 200
Southington, Connecticut 06489

**Webster**Bank

P.O. BOX 39
Waterbury, CT 06720-9962
800-325-2424

LIVING UP TO YOU™

Account Number: ▮▮▮305
Statement Date: 11/17/2021

Page 1 of 3

* 203134 000000543 1301 F2

Judith A Pompei Smith
370 Larchwood Dr
Warwick, RI 02886 9500

| Account Number | MSP0710073305 |
|---|---|
| Payment Date | 12/01/2021 |
| Payment Amount | $114,578.90 |

### Explanation of Payment Amount

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Regular Monthly Payment | $0.00 |
| Total Fees and Charges | $1,998.52 |
| Past Unpaid Amount | $112,580.38 |
| **Total Payment Amount** | **$114,578.90** |

### Account Information

| | |
|---|---|
| Outstanding Principal | $53,174.78 |
| Escrow Balance | $-82,248.13 |
| Suspense Account (unapplied) | $190.72 |
| Corporate Advance | $12,234.17 |
| Interest Rate | 4.875% |
| Prepayment Penalty | Not Applicable |

### Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If you want to stop receiving statements, write to us.

### Transaction Activity (5/1 to 11/17)

| Date | Description | Principal | Interest | Escrow | Suspense | Other | Total |
|---|---|---|---|---|---|---|---|
| 05/06 | Hazard Insurance Disbursement | | | $-463.00 | | | $-463.00 |
| 05/06 | Escrow Advance | | | $463.00 | | | $463.00 |
| 05/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |

### **Account History**

**Recent Account History**
- Payment due 10/01/2017: Unpaid balance of $1,864.76
- Payment due 11/01/2017: Unpaid balance of $1,864.76
- Payment due 12/01/2017: Unpaid balance of $1,864.76
- Payment due 01/01/2018: Unpaid balance of $1,864.76
- Payment due 02/01/2018: Unpaid balance of $1,864.76
- Payment due 03/01/2018: Unpaid balance of $780.89
- Current payment due 12/01/2021: $0.00
- Total: $114,578.90 due. You must pay this amount to bring your loan current.

**If you are experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

Your loan is in foreclosure; the date of our first legal action was 3/7/2019

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)* | $0.00 | |
| Total | $0.00 | $0.00 |

### Important Messages

***Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

Your loan is past maturity, the payment amount and total payment amount disclosed is not a payoff.

☐ MSP

*FPO*
Detach here and mail with your payment

**Webster**Bank

LIVING UP TO YOU™

## MONTHLY PAYMENT NOTICE

Loan Number ▮▮▮73305

☐ Check this box if name or mailing address is incorrect and complete form on reverse side.

Judith A Pompei-Smith
370 Larchwood Dr
Warwick, RI 02886

Make checks payable to:

WEBSTER BANK, N.A.
P.O. BOX 1809
HARTFORD CT 06144-1809

### Payment Amount

| | |
|---|---|
| **Payment Date:** | 12/01/2021 |
| **Payment Amount:** | $114,578.90 |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

71 00000710073305 11463768 00000000 0101146

## PAYMENT INFORMATION

Please include your loan number on your check or money order and mail it with the bottom portion of this statement in the enclosed envelope. DO NOT MAIL CASH. Avoid late charges by making payments for at least the exact amount on or before your due date. Payments must be received by Webster Bank, N.A. within the grace period to prevent late charges.

## CREDITING OF PAYMENTS

Payments received by mail on your account on a business day, prior to 5:00 PM EST, will be credited that day provided that they are sent to the address, by the time indicated, on your monthly statement. We credit mailed payments as of the date received, if the payment is received by 5:00 PM EST at the address shown on the remittance slip on the front of your monthly statement. Payments received by mail after 5:00 PM EST at the address shown on any day including the Payment Due Date, but that otherwise meet the above requirements will be credited as of the next business day. Payments made online, at an ATM, or by phone will be credited as of the date of receipt if made by 5:00 PM EST. Payments made in a branch on a business day will be credited that day. Credit for any other payments not made in the manner listed above may delay your payment up to five (5) business days.

Mail Payments ONLY to:
Webster Bank, N.A., P.O. Box 1809, Hartford, CT 06144-1809

## BANKRUPTCY

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United State Bankruptcy Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien.

## DEPARTMENT OF HOUSING & URBAN DEVELOPMENT (HUD) CONTACT INFORMATION

HUD sponsors counseling agencies throughout the country to provide free or low cost advice. You can search online for a list of homeownership counselors and counseling organizations at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or you may call the HUD toll-free telephone at 1-800-569-4287 or TDD 1-800-877-8339 for the housing counseling agency nearest you

## INSURANCE INFORMATION (if applicable)

If you change your HAZARD or FLOOD insurance carrier, send a copy of your insurance policy to the address below. Be sure to indicate your loan number on any documentation you submit.
The Mortgagee Clause should read as follows:
Webster Bank, N.A., ISAOA ATIMA, PO Box 790267
San Antonio, TX 78279-0267. Fax. (877)497-0628

## PROCEDURES FOR SUBMISSION OF WRITTEN NOTICE OF ACCOUNT ERROR AND SUBMISSION OF A WRITTEN REQUEST FOR ACCOUNT INFORMATION

You have certain rights under Federal law related to resolving account errors and requesting information about your account. If you think there is an error with your mortgage loan account or if you wish to request information about your mortgage loan, please write to us at the following address:

Webster Bank N.A., P.O. Box 2647, Hartford, CT 06146

In your letter, please include the following information:
Your full name, your account number, your mailing address and a brief description of the error you believe has occurred with your mortgage loan, or the account information you are requesting.

Within five (5) days (excluding legal public holidays, Saturdays and Sundays), of receiving a written notice of error or a written request for information, Webster Bank, N.A. will provide a written acknowledgment of receipt of the notice of error or request for information.

Responding to Notice of Error – A reasonable investigation will be conducted and any errors identified will be corrected within 30 days. A written notification will be provided to you that will include information on the correction, the effective date of the correction, along with contact information for further assistance. If the investigation determines no error occurred, a statement of the reason(s) for this determination will be provided along with a statement of your right to request documents relied upon in reaching the determination. We will provide this information to you, at no charge, and within 15 days of receiving your request for such documents. If during the investigation of a notice of error, we conclude that errors occurred other than, or in addition to, the error(s) alleged by you, we shall correct such additional error(s) and provide you written notification that describes the error(s) identified, the action taken to correct the error(s), the effective date of the correction and contact information for further assistance

While we conduct an investigation, the following is true
- We cannot require you to provide additional information as a condition of investigating an asserted error
- We cannot determine that no error occurred because you failed to provide any additional requested information without conducting a reasonable investigation
- We will not charge a fee or require you to make any payment

that may be owed on your account as a condition of responding to a notice of error.
- After we receive your notice of error, for 60 days, we will not furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error.

Responding to Requests for Information – For information requests for the identity and address or other relevant contact information for the owner or assignee of the mortgage, we will respond in writing within 10 days and for all other requests for information, we will respond in writing within 30 days, (excluding legal public holidays, Saturdays and Sundays). We will provide you with the requested information and contact information, including a telephone number for further assistance. We will also provide you with a written notification if we determine that the requested information is not available and we will provide the basis for the determination and provide contact information for further assistance if applicable

While we conduct an investigation for your request for information, the following is true.
- We will not charge a fee or require you to make any payment that may be owed on your account as a condition of responding to a request for information
- We may furnish adverse information to any consumer reporting agency or pursue any of our remedies, including initiating foreclosure or proceeding with a foreclosure sale, allowed by the underlying mortgage loan instruments during the time period that a response to an information request notice is outstanding.
- We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report

Please be advised, when you provide your telephone contact information, including cell phone numbers, we will interpret that as granting express consent to contact you at that number regarding this loan, including but not limited to, leaving pre-recorded messages. If you do not wish to be contacted at a certain number, please contact us at any time to withdraw such consent and we will update your contact information with an alternate number.

FPO

---

## HAS YOUR ADDRESS OR TELEPHONE NUMBER CHANGED?
### If so, Please Complete This Form and Check The
### ☑ Box On The Front Of This Payment Coupon.

Please Print In Ink

New Mailing Address_____  State _____  ZIP _____

City _____  Business Phone Number ( ) _____

Home Phone Number ( ) _____

Signature _____  Date _____

## Transaction Activity (5/1 to 11/17)

| Date | Description | Principal | Interest | Escrow | Suspense | Other | Total |
|------|-------------|-----------|----------|--------|----------|-------|-------|
| 05/24 | Property Maintenance | | | | | $20.00 | $20.00 |
| 06/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 06/22 | Property Maintenance | | | | | $20.00 | $20.00 |
| 07/19 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 07/26 | Property Maintenance | | | | | $20.00 | $20.00 |
| 08/17 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 08/23 | Property Maintenance | | | | | $20.00 | $20.00 |
| 09/17 | Late Charge Assessed | | | | | | $-2,139.45 |
| 10/05 | Property Maintenance | | | $-2,139.45 | | | $2,139.45 |
| 10/14 | Village Tax Disbursement | | | $2,139.45 | | $58.78 | $0.00 |
| 10/14 | Escrow Advance | | | | | $20.00 | $20.00 |
| 10/18 | Late Charge Assessed | | | | | $58.78 | $0.00 |
| 10/26 | Property Maintenance | | | | | | |
| 11/17 | Late Charge Assessed | | | | | | |

# EXHIBIT F



Natick Soldier Systems Center
General Greene Avenue
Natick, MA 01760

**Memorandum For Record  (MFR)**                                    **5 January 2022**

RE:      **Steven M. Smith**
         **0-2 (1LT) First Lieutenant,   Active Duty Enlisted Personnel**

         **("SCRA")  Servicemember's Civil Relief Act**

         **Reference**:  19-006508    Judith Pompei Smith

         **Address:**   370 Larchwood Drive, Warwick, RI 02886

TO:      **Orlans PC**

FROM:    **U.S. Army Troop Support Command**

PAGES:   **7  Pages**

Pursuant to the Servicemembers' Civil Relief Act ("SCRA") 50 U.S.C., (i) active duty, as defined in section 101(d)(1) of title 10, this letter is to verify that Lt. Steven M. Smith is an active duty "Commissioned" Officer with the U.S. Army. Therefore, Steven and his dependent, Judith Pompei Smith are entitled to payment protection from debt collection, late fees and loan foreclosure.

"Commissioned" Officers are active duty "enlisted personnel" and do not receive working papers.

Active duty "enlisted personnel" are Soldiers that serve the military full-time and are employed in a "permanent" military service position. The Soldier will live near the military installation that serves as their unit's base of operations; work 40 hours per week at the unit's base, is paid a full-time salary based on the pay grade of their military rank and length of service, and may also be deployed to defend our country.

Lt. Steven M. Smith is permanently assigned to a rotational work-week schedule at 2 Army bases in Massachusetts.

To satisfy verification of active duty and dependent's for Lt. Smith, <u>attached</u> are his Department of Defense Manpower Data Center SCRA Certificate, Selective Service Verification, Permanent Order, and Certificate of Promotion to First Lieutenant (1LT).

**Reference**: *Servicemember's Civil Relief Act ("SCRA") 50 U.S.C., (i) Active Duty, as defined in Section 101 (d) (1) of Title 10; Protection To Dependents, as defined in Section 308 (50 U.S.C. § 3959); and Mortgages in Section 303 (50 U.S.C. § 3953).*

Judith Pompei Smith is a Dependent of Lt. Steven M. Smith and receives 56% of Lt. Smith's income. Judith and son, ████████Smith are both Dependent's of Lt. Smith and reside at 370 Larchwood Drive, Warwick, RI.

Both of Lt. Smith's Dependents are registered in the Department of Defense (DOD) and MilConnect computer data systems. Both Dependents retain active Department of Defense (DOD) Military Identification and Privilege Cards.

Please note, U.S. Army Troop Support Commanders, all Servicemember's and their Dependent's cannot supply a bank, a debt collector or any other request with a copy of their Military Identification and Privilege Cards, as they are required to act in accordance with the laws in place, to safeguard Servicemember's military and personal information/data.

**Reference**: *"Photocopying any U.S. government identification card is prohibited; it's a violation of Title 18, U.S.C., Part 1, Chapter 33, Section 701".*

Please see the attached print-screen from our MilConnect Servicemember computer data system, for confirmation of Lt. Smith's Dependent's.

The military service is required to protect Soldier's personal data, military data, and credit history from credit/debt collectors. Therefore, please advise Webster Bank, that Lt. Smith's verification for active duty and protection of the Servicemembers' Civil Relief Act ("SCRA") have been satisfied.

At the request of Lt. Smith, a copy of this Memorandum and the attached documents will be sent to Rhode Island Housing for Lt. Smith's and Webster Bank's protection; with regards to him satisfying SCRA Servicemember's Civil Relief Act verification and bank compliance with Servicemembers' Civil Relief Act ("SCRA").

Thank you for your attention to this matter.

**DISTRIBUTION:**

Individual (1)
File (1)
iPerms (1)
Webster Bank (1)
Rhode Island Housing (1)

Department of Defense Manpower Data Center

Results as of: Dec-20-2021 11:09:07 AM
SCRA 6.11



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:              XXX-XX- 8279
Birth Date:
Last Name:        SMITH
First Name:       STEVEN
Middle Name:
Active Duty Status As Of: Feb-02-2009
Certificate ID:   29A4R3F0L528N6A

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| Feb-02-2009 | NA | Yes | Army Active Duty |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955



ADMIN.23 < > Servicemember Lookup < > Dependents          28 December 2021   08:15:03

| ServiceMember | Selective Service # | Status | Date of Birth |
|---|---|---|---|
| Steven M Smith | | Active | |

| Address | City | State | Zip Code |
|---|---|---|---|
| 370 Larchwood Drive | Warwick | RI | 02886 |

| Rank | Title | Pay Grade | Enlisted |
|---|---|---|---|
| (O)<br>Commissioned Officer | (1LT)<br>First Lieutenant | O-2 | 02 Feb 2009 |

## DEPENDENTS

| Name | Type -or- Percentage | Date of Birth | Social Security | Address |
|---|---|---|---|---|
| Judith Pompei Smith | 56 % Gam/Income | 05/16/1964 | xxx-xx-xxxx | 370 Larchwood Drive Warwick, RI ( |
| Smith | Child | 06/03/2010 | xxx-xx-xxxx | 370 Larchwood Drive Warwick, RI ( |





# Selective Service System

**Data Management Center | P.O. Box 94638 Palatine, IL 60094-4638**

www.sss.gov

December 20, 2021

**MEMORANDUM FOR REGISTRANT**
**SUBJECT: Online Verification of Your Registration**

    This document certifies officially that the below named individual is registered on the date shown with the Selective Service System as required by Section 3 of the Military Selective Service Act (MSSA) — 50 U.S.C. 3802.

> **Selective Service Number:**
> **Name:**
> **Date of Registration:**

STEVEN MICHAEL SMITH
2/2/2009

    Because you have satisfied the MSSA by registering, you remain eligible for those programs and benefits linked to registration compliance, such as student financial aid, government employment, job training, driver's license in several states, and U.S. citizenship for immigrants, for which you are otherwise qualified.

    Thank you for your inquiry. If you have any further questions, please feel free to contact the Data Management Center at the address above. Our telephone number is 847-688-6888 or toll - free: 1-888-655-1825.

*Donald M. Benton*

**Donald M. Benton**
**Director**



**DEPARTMENT OF THE ARMY**
U.S. ARMY HUMAN RESOURCES COMMAND
1600 SPEARHEAD DIVISION AVENUE
FORT KNOX, KY 40122

PERMANENT ORDER 135-91                                    22 June 2010

SMITH, STEVEN M.   1LT, NSSC, General Greene Avenue, Natick, MA 01760

Announcement is made of the following award:

Award: Certificate of Promotion First Lieutenant, 1LT, Enlisted Personnel
Date(s) or period of service:  2 February 2009 to 25 May 2010
Authority: AR 600-8-19, Paragraph 3-5c
Reason:  Successful completion of required education at OCS, Officer Candidate School
Format: 320

Streamer Size: N/A
Earned Honor Device: No
Assault Landing Device: No
Additional Information: N/A

BY ORDER OF THE SECRETARY OF THE ARMY:

ELISA M. ROBINSON
CW4, AG
Deputy Chief, Awards and Decorations Branch

DISTRIBUTION:
Individual (1)
iPerms (1)
File (1)

# THE ARMY of THE UNITED STATES OF AMERICA

## Certificate of Promotion

THIS IS TO CERTIFY THAT

THE PRESIDENT OF THE UNITED STATES OF AMERICA HAS BY
CONGRESSIONAL ORDER, ON THIS DAY, APPOINTED THE FOLLOWING
COMMISSIONED ARMY OFFICER TO THE PERMANENT RANK OF

## STEVEN M. SMITH

FIRST LIEUTENANT (1LT)



GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON, D.C.

ON THIS 25TH DAY OF MAY 2010



_Plumbley, H.H._
General Plumbley
7th Cavalry Commander

_Pete Green_
Pete Green
Secretary of the Army